IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SONJA BROWN :
:
:
v. : Civil No. CCB-11-699
:
:
WILMINGTON FINANCE, ET AL. :
:
:

## MEMORANDUM

Plaintiff Sonja Brown brings this action for violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"), to quiet title to her property, and to attempt to clarify who owns the mortgage on her house. Defendants Wilmington Finance Inc. ("WFI"), U.S. Bank National Association ("U.S. Bank"), and Ocwen Loan Servicing ("Ocwen") have filed motions to dismiss for failure to state a claim. Ms. Brown has filed a response brief in opposition, and the defendants have filed reply briefs. No hearing is necessary. *See* Local Rule 105.6. For the following reasons, the defendants' motions to dismiss will be granted.

## BACKGROUND

Taken in the light most favorable to the plaintiff, the facts of this case are the following. Ms. Brown purchased a property in Baltimore, Maryland, on June 30, 2004 for $138,000. (ECF No. 30 Ex. 3, at 7.) In April of 2006, she secured two loans from WFI for a total of $200,000, using the property as collateral. The larger loan, for $160,000, was structured so that she would make interest-only payments for the first five years. (ECF No. 1 Ex. C, at 5.) The $40,000 loan

1

appears to have been structured so that payments covered both interest and principal. (ECF No. 1 Ex. B, at 10.) The closing on the loan was conducted by a company called Express Financial Services ("Express Financial").[1]

Ms. Brown was laid off from her job in July 2007 and then developed "an incurable Pulmonary Disease" in November 2007. After exhausting her 401(k) and pension funds, she began falling behind on her loan payments in September of 2009. (Am. Compl. 13, ECF No. 11; HomEq Payment History, ECF No. 1 Ex. B, at 13–15.) In December 2009, Ms. Brown contacted the two entities servicing her loans at the time, HomEq and U.S. Bank, and requested a loan modification. HomEq denied her request, and U.S. Bank offered her "only . . . a Balloon Mortgage." (Am. Compl. 13.)

In a letter dated May 26, 2010, HomEq and U.S. Bank notified Ms. Brown of their intent to foreclose. (*Id*.) Subsequent to receiving the notice of intent to foreclose, Ms. Brown contacted HomEq and alleged "deceptive practices believed to have occurred in the origination and/or servicing" of her loan(s), and she asked for the contact information for the current owner of her loan. (ECF No. 1 Ex. B, at 3.) Thereafter ensued a series of communications between Ms. Brown, HomEq, Ocwen, U.S. Bank, and WFI, in which Ms. Brown alleged a misrepresentation of the APR on her loan documents (ECF No. 1 Ex. A, at 2); attempted to get information about her loans and procure evidence of her original promissory note (*id.* at 33.); and attempted to unilaterally rescind her loans, citing provisions of TILA, and declared that the banks had "defaulted on their claim on" her mortgage for failing to adequately respond to her requests.

---

[1] Express Financial was named as a defendant on Ms. Brown's original complaint. (ECF No. 1.) Ms. Brown, however, never requested a summons for Express Financial, and she subsequently advised the court that she had included the company as a defendant "in error." (ECF No. 4.) Express Financial was not listed as a defendant in Ms. Brown's amended complaint. (ECF No. 11.)

(ECF No. 1 Ex. B, at 33.)

In response to Ms. Brown's communications, HomEq sent her "copies of the disclosures taken from [her] loan file" and a copy of her payment history on the $160,000 loan. (*Id.* at 6, 8, 13–15.) Ms. Brown appears to have attached some of these documents to her pleadings, though many if not all of the attached documents are incomplete, and neither Ms. Brown nor any of the defendants have clarified whether the documents attached to the complaint were all given to her in response to her requests in 2010, whether these are all of the documents associated with Ms. Brown's loans in defendants' files, or whether Ms. Brown was given all of the relevant documents at her loan closing. None of the various disclosure statements attached to the complaint, including a copy of her "Notice of Right to Cancel," appear to have been signed by Ms. Brown. (*Id.* at 6–9, 15). The only attached document initialed by Ms. Brown is the recorded Deed of Trust securing the $40,000 loan. (*Id.* at 2.)

WFI also sent Ms. Brown an explanation of the history of her loans' ownership and servicing. In short, after the loans were made, WFI sold the $160,000 loan to Lehman Brothers and the $40,000 loan to U.S. Bank, and the servicing of the two loans was transferred to HomEq and to U.S. Bank, respectively. (*Id.* at 10–11.) It appears that the $160,000 loan, at least, was thereafter securitized and Wells Fargo became a trustee. (July 6, 2010, Letter from HomEq to Ms. Brown, ECF No. 1 Ex. B, at 3.) On August 31, 2010, HomEq—and possibly also U.S. Bank, it is unclear from the record—transferred the servicing of Ms. Brown's account to Ocwen. (*Id.* at 7; Am. Compl. 13.)

Undoubtedly, the situation was frustrating for Ms. Brown. To give an example, Ms. Brown wrote to both WFI and HomEq in late August 2010 requesting production of her original

3

promissory note. (ECF No. 1 Ex. A, at 7.) The companies responded simultaneously. WFI responded that it had sold her loans and did not retain her original Promissory Note and stated that she would have to contact HomEq to arrange to inspect it. (ECF No. 1 Ex. B, at 11.) HomEq responded that she needed to address issues about loan origination with WFI. (*Id.* at 12.)

On March 15, 2011, Ms. Brown filed a *pro se* complaint in this court against the defendants, and subsequently filed an amended complaint on April 29, 2011. In the amended complaint, she alleges "far reaching fraudulent schemes" by the defendants, including "negligent or intentional misrepresentation of appraised fair market value [of the property] upon which Plaintiff was contractually bound to rely." (Am. Compl. 2.) Ms. Brown also alleges that she was originally promised a 6 percent interest rate on the loan, and that the person who came to her home for the closing reiterated that the interest rate was 6 percent, possibly pointing to some document, but that the actual interest rate on the $160,000 loan ended up being 7.55 percent. (*Id*. at 13.)[2] She alleges that in 2010 she "discovered" two sets of loan origination documents mirroring this discrepancy, and she attached the documents to the original complaint. (*Id.*; *see* ECF No.1 Ex. C, at 5, 9.) Ms. Brown does not clarify whether she received these documents from HomEq pursuant to her request in 2010, or whether she already had been in possession of one or more of the documents.

Ms. Brown seeks compensatory and punitive damages, and she seeks injunctive relief in the form of 1) a declaratory judgment ratifying a rescission under TILA, or otherwise declaring any claims or security interest held by Defendants to be void due to TILA violations, and 2) an

---

[2] Ms. Brown does not clarify whether the person who came to her home was employed by Express Financial or by WFI.

order to quiet title to the property in her favor due to defendants' failure to produce her original promissory note or to comply with TILA, the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601–2617 ("RESPA"), the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p ("FDCPA"), or Regulation Z, 12 C.F.R. §§ 226.1–.48, the regulation promulgated under the statutory authority afforded by TILA.  In the alternative, she seeks to stay any collection activities against her until the defendants have produced documents proving their claim.  Ms. Brown also alleges violation of "Maryland unfair and deceptive trade practices," though she does not cite any specific provision of Maryland state law. (*Id.* at 2.)

In response to the suit, defendants WFI, U.S. Bank, and Ocwen have filed motions to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  Defendant HomEq has not responded, though there is no evidence in the record that the company was served with either the original or the amended complaint.

## **STANDARD OF REVIEW**

A Rule 12(b)(6) motion tests the sufficiency of a complaint and does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  While the court "need not accept the legal conclusions drawn from the facts, and [] need not accept as true

unwarranted inferences, unreasonable conclusions or arguments," *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009), a *pro se* complaint must be liberally construed in favor of the plaintiff. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

To survive a motion to dismiss, the factual allegations of a complaint, assumed to be true, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The plaintiff's obligation is to *show* sufficiently the "grounds of his entitlement to relief," offering "more than labels and conclusions." *Id.* It is not sufficient that the well-pleaded facts suggest "the mere possibility of misconduct." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1950 (2009). Rather, to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning the court could draw "the reasonable inference that the defendant is liable for the conduct alleged." *Id*. at 1949 (internal quotations and citation omitted).

## **DISCUSSION**

Having carefully considering Ms. Brown's amended complaint and attached documentation, as well as the arguments raised in the parties' motions, the court must conclude that Ms. Brown has failed to state a claim upon which relief can be granted. Even construing Ms. Brown's *pro se* complaint liberally, it fails to meet the requirements set forth by the Supreme Court in *Iqbal* and *Twombly*. Below, the court addresses each of Ms. Brown's claims in turn.

1. **Rescission**

Ms. Brown first alleges she has unilaterally rescinded her loan agreements, pursuant to

TILA, by sending notice to the defendants of her intent to rescind.[3] It is, however, settled law in the Fourth Circuit that "unilateral notification of cancellation does not automatically void the loan contract." *Am. Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007). "Otherwise, a borrower could get out from under a secured loan simply by claiming TILA violations, whether or not the lender had actually committed any." *Id.* (quoting *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1172 (9th Cir. 2003). Rather, "until rescission is recognized by the lender or the court, a borrower has 'only advanced a claim seeking rescission'" by sending notice to his lender. *Bradford v. HSBC Mortg. Corp.*, 799 F. Supp. 2d 625, 631 (E.D. Va. 2011) (quoting *Shelton*, 486 F.3d at 821 (quotations and alterations omitted)).

The court, however, is unable to grant Ms. Brown the requested rescission. Under TILA, a borrower may rescind anytime within three days of the loan closing. *See* 15 U.S.C. § 1635(a). If a creditor fails to provide TILA disclosure notices, or if the disclosures are deficient, then section 1635(f) extends the period within which rescission is available to "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." 15 U.S.C. § 1635(f). The three year period subsequent to Ms. Brown's loan closing expired on April 25, 2009, over a year prior to Ms. Brown's first notice to her lenders or action in this court.

Ms. Brown contends TILA's three year limit should be equitably tolled, but this argument has been foreclosed. The United States Supreme Court has held that § 1635(f) is not a traditional statute of limitations. *See Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417 (1998).

---

[3] Ms. Brown's complaint could be interpreted as requesting rescission pursuant to RESPA as well. But RESPA does not provide for rescission. *See* Real Estate Settlement Procedures Act, 12 U.S.C. § 2615 (stating "nothing in this chapter shall affect the validity or enforceability of any sale or contract for the sale of real property or any loan, loan agreement, mortgage, or lien made or arising in connection with a federally related mortgage loan."); *accord Barrett v. Am. Partners Bank*, 2009 WL 2366282 at *6 (D. Md. July 28, 2009). As an unpublished opinion, *Barrett* is cited not for any precedential value but for the consistency of its reasoning on this issue.

Rather, § 1635(f) is a statute of repose, and therefore is an "absolute time limit" not subject to equitable tolling. *See Jones v. Saxon Mortg., Inc.*, 537 F.3d 320, 327 (4th Cir. 1998) ("Because § 1635(f) is a statute of repose, the time period stated therein is typically not tolled for any reason.")  Ms. Brown brought this suit nearly five years after her loan agreements were consummated, thus her effort to rescind is barred by the § 1635(f) statute of repose.

Aside from her claim of rescission, Ms. Brown suggests no other basis by which TILA affords this court the power to void the security interest in her home.  A TILA "violation does not automatically cause the mortgage on the property to become void." *In re Apaydin*, 201 B.R. 716, 723 (Bankr. E. D. Pa. 1996).  Rather, TILA simply "gives the courts the power to regulate the manner in which a consumer may exercise the right of rescission." *Id*.  Because a court-ordered rescission is barred by the statute of repose, TILA does not give the court the authority to void Ms. Brown's mortgage.

### 2. Damages

Defendants argue that any damage claim by Ms. Brown is also barred by the respective statutes of limitations in TILA and RESPA.  TILA provides for civil liability for "any creditor who fails to comply" with specified sections of the statute.  15 U.S.C. § 1640(a).  However, this section also contains a statute of limitations, providing that actions "may be brought . . . within one year from the date of the occurrence of the violation." *Id.* at § 1640(e).  This "one-year limitations period begins to run from the date the loan agreement is entered into." *Davis v. Edgemere Fin. Co.*, 523 F. Supp. 1121, 1123 (D. Md. 1981).  Damage claims for loan origination violations under RESPA are similarly subject to a one-year statute of limitations.  *See* 12 U.S.C.

§ 2614.[4]

Unlike claims for rescission, claims for damages under TILA and RESPA are subject to equitable tolling under the equitable doctrine of fraudulent concealment. *See Davis*, 523 F. Supp. at 1125; *see also Kerby v. Mortg. Funding Corp.*, 992 F. Supp. 787, 797 (D. Md. 1998); *Minter v. Wells Fargo Bank, N.A.*, 675 F. Supp. 2d 591, 594–95 (D. Md. 2009) ("[T]his Court follows the clear majority of circuits and concludes that equitable tolling is available under RESPA.").[5] For the court to find the TILA and RESPA statutes equitably tolled, however, the plaintiff must have properly alleged both fraudulent concealment on the part of the defendants and the inability of the plaintiffs, despite due diligence, to discover the fraud. *Kerby*, 992 F. Supp. at 798 (citing *Davis*, 523 F. Supp. at 1125–28).

"'[M]erely intoning the word 'fraudulently' in a complaint is not sufficient' to raise the defense of equitable tolling." *Minter*, 675 F. Supp. 2d at 596 (quoting *Weinberger v. Retail Credit Co.*, 498 F.2d 552, 555 (4th Cir. 1974)). Rather, a claim of fraudulent concealment must be plead with specificity. "[A] plaintiff seeking to escape the statute in such a case shall make distinct averments as to the time when the fraud, mistake, concealment or misrepresentation was discovered, and what the discovery is, so that the court may clearly see, whether by the exercise of ordinary diligence, the discovery might not have been made." *Id.* (quoting *Weinberger*, 498 F.2d at 555) (internal quotation marks omitted).[6]

---

[4] RESPA has a three-year statute of limitations for violations related to required notice to the borrower regarding the assignment, sale or transfer of loan *servicing*. 12 U.S.C. § 2614 (discussing 12 U.S.C. § 2605). But, Ms. Brown has not alleged any specific violation of § 2605.

[5] While WFI acknowledges equitable tolling is available, defendants U.S. Bank and Ocwen argue that the court should reconsider the question because of recent Supreme Court decisions unrelated to the specific federal acts at issue. Because, as discussed below, Ms. Brown has not alleged fraudulent concealment with the specificity necessary to support equitable tolling, the court need not address this argument.

[6] A federal claim of fraudulent concealment must meet a "relaxed" analysis under the heightened pleading standards of Fed. R. Civ. P. 9(b), but only as to the claim of the defendants' omission. *Hill v. Brush Engineered Materials,*

Ms. Brown's amended complaint does not provide sufficient factual matter to meet this standard. The amended complaint alleges two acts of fraud related to her loan origination: that she was led to believe that she was receiving a 6 percent interest rate when in fact she received a higher rate and that the appraisal of her house was inflated. With regard to the mismatched interest rates, Ms. Brown alleges she was told at closing that her interest rate would be 6 percent, but she fails to allege when she first saw or came into possession of documents demonstrating that her interest rate was in fact 7.55 percent.[7] Without this information, the court cannot discern when she discovered the alleged fraud and thus cannot "clearly see" that equitable tolling is appropriate. *Weinberger*, 498 F.2d at 555.

With regard to the appraisal, Ms. Brown alleges that her house was appraised for $210,000 as part of the loan process (Am. Compl. 13), but the documentation Ms. Brown has included in the record does not suggest this amount was inflated. An attachment to her opposition brief purports to chart an estimated value of the property over the last several years, and shows the estimated value of the property reaching $208,000 not far from the loan closing date. (ECF No. 30 Ex. 2.) Thus, on this second claim, Ms. Brown has failed to allege that fraud occurred at all, much less that she did not discover it despite due diligence.

In sum, Ms. Brown has not provided the court sufficient evidence to apply the doctrine of equitable tolling. As a result, her claims for TILA and RESPA damages must be dismissed as barred by the respective statutes of limitations and therefore for failure to state a claim.[8]

---

*Inc.*, 383 F. Supp. 2d 814, 822–23 (D. Md. 2005).

[7] Ms. Brown has attached portions of several documents to her pleadings, but the attached documents are uniformly incomplete and without explanation as to which documents she had been in possession of from the closing and which documents had been sent to her by HomEq in July 2010.

[8] "The statute of limitations is an affirmative defense that a party typically must raise in a pleading under Fed. R. Civ. P. 8(c) and is not usually an appropriate ground for a Rule 12(b)(6) motion to dismiss." *Interphase Garment Solutions, LLC v. Fox Television Stations, Inc.*, 566 F. Supp. 2d 460, 463 (D. Md. 2008) (citing *Eniola v.*

### 3. Quiet Title

Ms. Brown also seeks an order to quiet title in her favor due to defendants' failure to produce her original promissory note or to comply with TILA, RESPA, FDCPA, or Regulation Z. The court cannot grant her this relief.

Under Maryland law, the burden of proof in an action to quiet title rests on the plaintiff. A person in "actual peaceable possession of property" may sue to quiet title when "her title to the property is denied or disputed, or when any other person claims . . . to own the property . . . or to hold any lien encumbrance on it." Md. Code Ann., Real Prop. § 14–108(a). In such an action, however, "the plaintiff, and not the defendant, must prove possession and a legal claim to title *before* the burden is shifted to the defendant to establish superior title." *Porter v. Schaffer*, 728 A.2d 755, 773 (Md. App. 1999) (emphasis in original).

Here, Ms. Brown admits that she took out the two loans from WFI and, in doing so, encumbered her property by a deed of trust. She also admits that she has failed to satisfy the encumbrances. As discussed above, Ms. Brown's claim for rescission is barred by the TILA statute of repose, and she has articulated no other reason under law why defendants' purported interest in her property should be voided. As a result, the court must conclude that Ms. Brown has not articulated a viable action to quiet title. *Cf. McKinney v. Fulton Bank*, 776 F. Supp. 2d 97, 102–03 (D. Md. 2010) (allowing an action for quiet title to survive a motion to dismiss on the

---

*Leasecomm Corp.*, 214 F. Supp. 2d 520, 525 (D. Md. 2002)). "However, dismissal is proper 'when the face of the complaint clearly reveals the existence of a meritorious affirmative defense.'" *Id.* (quoting *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996). "A complaint showing that the governing statute of limitations has run on the plaintiff's claim for relief is the most common situation in which the affirmative defense appears on the face of the pleading and provides a basis for a motion to dismiss under Rule 12(b)(6)." *Id.* (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357, at 714 (3d ed. 2004)).

strength of a related action for rescission).

### 4. Other Requests for Relief

Ms. Brown, in the alternative, requests this court stay any collection activities against her until the defendants have produced documents proving their claim. The amended complaint alleges that, following defendants' notice of intent to foreclose, Ms. Brown "disputed the debt Within [sic] the 30 days in accordance with the FDCPA therefore all collection activities should have ceased until the debt was verified." (Am. Compl. 13.)[9]

Ms. Brown is correct that the FDCPA limits debt collection activities following notice that a debt is disputed. If a debt collector receives such a notice, the debt collector

> shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. §1692g(b).

Ms. Brown does not, however, allege that any debt collection activities have taken place subsequent to her notice to defendants. Where no further debt collection activities take place after the notice, a debt collector is in compliance with §1692g(b). *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997). Ms. Brown therefore requests injunctive relief to preclude defendants from taking a future action, but an injunction "will not be granted against something merely feared as liable to occur at some indefinite time in the future." *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 347 (4th Cir. 2001) (quoting *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931)). As of the date of this opinion, the court has not been

---

[9] Parsing Ms. Brown's language, the court interprets her self-styled action for "Verification of Proof of Claim" in Count III of her amended complaint to be an action under the FDCPA.

advised of any foreclosure proceedings instituted against Ms. Brown. Accordingly, Ms. Brown's request for a stay of collection efforts must be denied without prejudice.[10]

Finally, in opposing defendants' motion to dismiss, Ms. Brown suggests this court has diversity jurisdiction over related state law claims. Ms. Brown did not assert diversity jurisdiction in her amended complaint, nor does she support this assertion in her opposition brief with any factual support as to the principal place of business of the various defendants. As a result, the court may not assume that diversity jurisdiction exists. Thus any state law claims would have to be considered under supplemental jurisdiction. *See* 28 U.S.C. § 1367.

The Supreme Court has advised that "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over ... pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citation omitted). The Court added that when "the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Id.* (citation omitted); *see* 28 U.S.C. § 1367(c)(3).

Here, aside from an oblique and unsupported reference to "Maryland unfair and deceptive trade practices," plaintiff's amended complaint articulated only federal law claims under TILA, RESPA, and FDCPA. The court has considered these federal claims and dismissed them. Accordingly, the court declines to exercise supplemental jurisdiction over plaintiff's state

---

[10] While denying Ms. Brown's FDCPA action without prejudice, the court notes that Ms. Brown has already amended her complaint once, and the court has denied a second effort to amend. (ECF No. 29.) Thus, in light of the numerous deficiencies with the original and the amended complaints, it would be inappropriate to offer further opportunity to amend unless *subsequent* events merit the court's attention.

law claims, which therefore will be dismissed without prejudice.

### 5. Service of Process

Because the court dismisses all claims against defendants WFI, U.S. Bank, and Ocwen, the court need not consider their exceptions to service of process. Defendant HomEq has not appeared in this case. There is no evidence in the record that HomEq was served properly, and Ms. Brown has not moved for a default judgment. More than 120 days have passed after Ms. Brown filed her amended complaint. Therefore, pursuant to Fed. R. Civ. P. 4(m), the court will dismiss the action against HomEq without prejudice.

A separate order follows.

| | |
|---|---|
| March 21, 2012 | /s/ |
| Date | Catherine C. Blake |
| | United States District Judge |